Indemnity versus Central Terminal. Good morning, Your Honors. Good morning. May it please the Court. My name is Christopher Bradley for the appellant, Philadelphia Indemnity Insurance Company. The central question on this appeal is whether or not a statutory violation of the Dram Shop Act constitutes an occurrence under a commercial general liability policy. Is that the right question? Or is the right question whether a statutory violation of the Dram Shop Act coupled with a resulting automobile crash is an occurrence? I don't believe so for this reason. As the policy makes clear, the legal liability of Central Terminal has absolutely nothing to do with the automobile accident. It doesn't have everything to do with the automobile accident. If the automobile accident had not occurred, what would be the claim by any of these plaintiffs? In other words, if the underlying defendant had served liquor to an intoxicated person and he then walks home and goes to bed and sleeps it off, there would be a violation of the act, would there not? Well no, the damage has to be a result of a conduct of an intoxicated person. Yes. But the violation of the statute does not involve whether or not there was an occurrence. The prima facie for the plaintiffs in this case, whether or not the automobile accident was purposeful or whatever, has nothing to do with Central Terminal's liability. Their liability, and again, because proximate cause and foreseeability are not part of the prima facie, the plaintiffs to prevail don't have to prove the damages occurred as a result of an accident. They have to prove four things. The commercial sale of alcohol, that it was done knowingly to a visibly intoxicated person, and the most critical thing is that they have to prove intoxication at two points. One, when they serve, and secondly, that that intoxication has something to do with the damage. I understand all of that. But why doesn't this come under Judge Cardozo's decision going all the way back to 1921 from the New York Court of Appeals in Messersmith that a policy that's about accidents or occurrences covers the accidental results of intentional acts? Why is this not, from the vantage point of the insured, the accidental result of an intentional act? They intentionally or their agent intentionally, knowingly served liquor to someone, but not intending or even necessarily foreseeing that there was going to be some kind of injury as a result of that. And then it happens. It's the unintentional result of an intentional act. And I think the answer is because the dram shop abrogates the common law, and as Judge Cardozo pointed out in Messersmith, when you look at the transaction as a whole, that we are not liable for the conduct of the individual. Mr. Gilray, the operator of the motor vehicle, is not our insured. We are not. In Messersmith, it was the actor who precipitated the harm, whether intentionally or not. But that's not the question. The question is whether there's an accident or an occurrence here. And the question, as I understand it, that's being asked you is whether, when there is an accident following an intentional violation of the Dram Shop Act, why isn't that an accident or an occurrence? Because we're not liable for the conduct. The person who caused the accident is not our insured. It's not a question of whether you're liable or not. It's a question of what the policy says. The policy says there has to be an accident or an occurrence. And that's the issue that we're facing, isn't it? As opposed to something intentional. That wasn't an accident. It is. But in this case, when the liability of central terminal doesn't turn on whether somebody intended to do something or not, the policy, when it says legal liability for damages, bodily injury arising out of an occurrence, to which this insurance applies, we are not legally liable for that occurrence. The insured is not intending that there be an accident. And so that's why it is an occurrence, if it's within the occurrence. There isn't an intent to cause an accident, but it results from the Dram Shop violation. And I would submit, Your Honor, we will never know, because, again, under the unique pleadings in this case, that inquiry will not be addressed by the underlying trial court. Whether or not the circumstances of the accident itself are immaterial to central terminal's legal liability has absolutely nothing to do with whether or not there was an accident, whether it was an accident. There can be no liability without the accident, correct? There can be no liability without damage. Are you saying that we don't know whether Gilray intentionally ran these people over, and if he intentionally ran these people over, then there should be no liability on you? So we should assume that because there's never going to be a contest as to whether he did or didn't intentionally run the people over? Is that the point? Ironically, Your Honor, whether he intentionally ran them over or not, we're still liable if they make out the four elements under the Dram Shop Act. That's why with the district court, by conflating an occurrence on, again, the unique pleadings, because when they talk about the allegations, there was- Now, do you have any case under New York, decided under New York law by any New York court that supports your view? Well, I believe the general law on an occurrence where I'm not aware of any case where they pick up the conduct of somebody who's not our insured, and their conduct and their intent or what they were thinking has nothing to do with our liability. But we do have that second department case that you say was wrongly decided that would support liability, and you taxed the district court for relying on the appellate division case, right, rather than explicitly predicting what the New York Court of Appeals would do. Correct. I did say that the New York Court of Appeals has not explicitly addressed that. Right. So we've got one appellate division case that goes the other side's way, that is based on the reasoning, you say erroneously, of a prior New York Court of Appeals decision. And we have nothing on the other side of the ledger. Well, what I say is that the appellate division's dissent, which did expressly address the issue, said that a violation of the Dram-Shopt Act is not an occurrence, and I do cite to other cases in other districts who have explicitly addressed this say that it is not an occurrence. When you say other districts, you mean outside of New York. Correct. That's right. We go to the fundraising endorsement here. The fundraising endorsement itself doesn't speak in terms of an occurrence. It's an extension of the general liability. It's an amendment or endorsement to the general liability policy, correct? That's correct. But it says here this insurance applies to bodily injury, property damage, and personal and advertising injury arising out of your fundraising events, with the following exceptions which don't apply. Arising out of is not tied to any particular occurrence. It's broader than that. Right. And to the extent that you're going to argue, well, it still encompasses occurrence because it's part of the general, it seems to me that this is not, when it doesn't speak in the language of an occurrence, then it may create an ambiguity which would cut against the insurer. Is that right? In other words, why isn't there liability under the general policy by virtue of the endorsement of that general policy, which expands, seems to expand the coverage? I think the answer is in the language that, again, it uses arising out of which we generally understand incident to originating from. But, again, what's defined there is the bodily injury. Now, importantly, the bodily injury has absolutely nothing to do with Central Terminal. The people who were injured were not at that festival. So the bodily injury can't- But you got the insurance. They got the insurance to cover fundraising events, maybe because there were problems about the coverage in the main policy, and they wanted to nail this down. That's right. And they would have coverage for a bodily injury arising out of an occurrence at the festival. It doesn't say that. It says arising out of all of your fundraising events with the following exceptions. Right. And I submit that, again, what defines what arises out of, as opposed to a lot of additional insured endorsements where they refer to the event or the business operation, here it's the bodily injury that must arise out of the fundraising event. And it did not. It has absolutely nothing to- I don't understand. Why doesn't it? Why doesn't the bodily injury come from that event? You said yourself that the jam shop liability for the terminal has to depend on the fact that the guy was still drunk when he ran people over. Right. And, again, that's our legal liability, not the individual. The bodily injury has to occur at the event and has to originate from. The bodily injury here has nothing to do with the event. It doesn't say that. It says arising out of. It says it's connected to somehow. Right. But, again- In relation to. I mean, whatever it could be. It's arising out of your fundraising event. And alcohol is served to an intoxicated person who goes out and hits somebody. And it seems to me that that just is flowing out of the fundraising event, right? And I would, again, go back to no matter what, that that fundraising event only modifies the general liability coverage so that if it does not arise, the bodily injury does not arise out of an occurrence. And here there's no allegation that constitutes an occurrence that would give- No, but what I'm suggesting is that the arising out of language, which is not referred to an occurrence, broadens the definition, broadens the coverage beyond occurrence to anything arising out of. And, therefore, it's broader. Now, that would not affect, presumably, a separate endorsement for the umbrella policy. But it could affect the coverage on the basic policy. The $2 million, $4 million. I submit, then, it's still that it's occurrence-based because the fundraising endorsement modifies the commercial general liability policy, which, again, I submit that under the pleadings and what's alleged against Central Terminal does not constitute an occurrence. I think maybe putting it a little differently, I think your argument might be that because the original policy talks about $2 million in limit of liability and $4 million in total, for each occurrence, the actual coverage is tied to occurrence in the general. That's correct, Your Honor. But what I'm wondering about is whether this creates an ambiguity here. I don't believe not because the phrase arising out of is well litigated. The event or what defines what's arising out of is the bodily injury. And there's no allegation that this bodily injury has anything to do or incident to the fundraising event. These people were not there. It would be completely different if the bodily injury occurred at the event, in which case we don't dispute that they would have general liability coverage. All right. You have some rebuttal time. We'll hear from the other side. Your Honor, Ken Africano on behalf of the insured Neapolitan Central Terminal Restoration Corporation. And please interrupt me with any questions, but I reaffirm this idea that the primary argument by Philadelphia Insurance is that we're going to exclude all Dram Shop coverage from commercial general liability policies because there's some intent element. Let me just start by saying that that statute, it's a statutory claim. It doesn't have an intent element. It doesn't have a negligent element. It's a statutory claim and there's certain things that need to be proven. But if we go along with that argument, the argument still flies in the face of well-established precedent that says even if it's an intentional act, even if it's an intentional act, something as blatant in one of the cases we have where a person takes a gun and fires it at somebody thinking that it's unloaded and builds or another case where somebody's excavating their land and building this thing despite warnings that it might cause damage to the next door neighbor. And the courts don't bar coverage based on more that the allegation is for negligence or whether it's for an intentional tort or whether it's for Dram Shop. There can even be a liability for an intentional tort committed by a third party that is the result of a liability causing act by, for example, a landlord, right? If the landlord says intentionally, I'm not going to bother to fix that door lock, not intending that the inhabitant of the apartment, the tenant of the apartment be raped. And some guy breaks in through the door, which is, has a defective lock and rapes the tenant, then the landlord is liable and the landlord's liability insurer pays the tab, right? Even though there was, because there was an unintended result of intentional conduct, not only on the part of the insured, but also on the part of the interloping third party. Absolutely, Your Honor. And that is the test. The court has forever looked at, and you brought out the case from 1921, has always looked at what are, was the insured intending the results? If the insured punches somebody in the nose and they get a broken nose, well, that's immediate and it's an intended injury. If the insured does something and then there's a series of consequential events as here, I mean, you couldn't have more than here. You actually have two car accidents before the car accident that really caused the event. But for any of those car accidents, those gentlemen wouldn't have been standing by that road. So there's so many elements that went into this, so many consequential acts and fortuitous, I hate to use that word because this was a horrible accident. But the concept is that it's not an intended act. And by the way, the law says it's all right if it's foreseeable. It's just not intended. And clearly, nobody's claiming that that was the intent of the insured. What about the fundraising endorsement? You heard his argument here that that's also subsumed within the occurrence provision and therefore the arising out of language really doesn't do any extra work. It's hard to imagine because there is no exclusion in the CGL policy for fundraising events. Any exclusions come from the endorsement itself. You buy extra insurance to get a heightened level of coverage and you specifically schedule the Dingus Day event, which is what gave rise to it. And the argument is you don't have coverage for that. That makes no sense to me. The substituted language- There's an additional premium paid here, right? Yes, absolutely. $900 or something like that? Right, because we scheduled this event specifically where alcohol would be sold and that would get around whatever exclusion is in the fundraising endorsement for that. And we should get coverage under that. And no question, what is really the amendment? How does the endorsement modify the CGL policy? Well, you nailed it. Exactly. You're substituting the words bodily injury arising out of the event, the scheduled event, for the words in the CGL policy that say bodily injury caused by an occurrence. So to read that word back in, if that's what they intended, they needed to say it. And as the court knows, if there's an ambiguity, it's interpreted against the insured. I have just- Do I misunderstand that the fundraising endorsement adds an additional $2 million in coverage? Am I wrong about that? We're not. It's just the underlying coverage amount. Yes, it just makes it easier to get that underlying $2 million amount. Now, Philadelphia Insurance also says you also bought a liquor liability exclusion. And because you bought that, because you paid an additional premium for that, we don't have to give you as much coverage. And that makes no sense to me. Why would you buy additional insurance if you're going to get a million dollars under that? And that is now going to limit your ability to get the $2 million that you're entitled to under the CGL and the endorsement. That makes no sense. But you would agree that the fundraising endorsement does not assist you with regard to the umbrella? It's not part of the umbrella. No, you're right. It's not. So that clause only helps us- That goes back to the original argument that you're making. Right. I still think the court low decided right on the access policy because just using the traditional analysis of the courts that say, was this an intended act of the insured? Even if it was intentional, even if you agree with him that the dram shop has some level of intent to it, which I don't necessarily agree with, but just go along with it. The question is still, was the injury arising out of an accident? Was it a series of consequential events? I want to let these gentlemen speak unless you have another question for me. I just wanted to say on the reply brief, it said that we did not, Central Terminal did not preserve below its argument for attorney's fees. That is absolutely not true. It's in the record in at least five different places, including 350, 358 through 60 on the motion argued. We've also made another motion to the court for our attorney's fees below. And the court has said, wait to see what happens at the Second Circuit. It's very important, the Central Terminal, which is a not-for-profit corporation. And to my left from that, that is preserved. It was preserved below. It was certainly preserved many times and in this court. Thank you. Thank you. Good morning, Your Honors. My name is Charles Minor. I represent William Sheehan and Marcy Sheehan. William Sheehan is one of the two pedestrians who was injured in this case. The only point I'd like to make this morning, Your Honors, is that it's our position that the case of Aguadio, decided by the New York Court of Appeals in the year 2000, basically sets forth what an occurrence is. And that should govern how the court decides this case, whether or not there's an occurrence in this case. In Aguadio, a tenant was assaulted by an unknown assailant in a lobby. The claim was brought by the decedent's estate against the insured owner of the property for the intentional act of the assailant. And Judge Wesley, in that case, in the opinion for the New York Court of Appeals, stated that from the standpoint of the assailant, it's an intentional act. It could not seriously be argued from the standpoint of the victim that this is an intentional act. And therefore, it's an accident and therefore an occurrence from the standpoint of the insured. This court has also decided the case of Johnstown, where the city of Johnstown had a leaking garbage dump, I think it was. Garbage was leaking into the water table. The city was notified that there was a problem. The city did nothing about it. Litigation ensued and the claim was that this was an intentional act by the city and therefore not an occurrence. Again, the analysis, as the court pointed out earlier, that it's the overall viewpoint of the entire event from the beginning to end. And in the court in Johnstown said, where damages accidentally arise out of a chain of events, unintended, though expected or foreseeable, that occur after an intentional act. And that's what I submit happened in this particular case. So for all those reasons, it's our position that this was an occurrence and therefore falls within the terms of the policy. If there are any questions, Your Honor, I'm happy to. Thank you.  May it please the court. My name is Joseph A Matliano on behalf of Mr. Serrano, one of the injured parties. I only have a few points. I think the court has picked up on every argument that we have briefed and made here today. But I want to put a little different spin on the first point of whether or not this is an occurrence. And here's my argument to you. Hopefully you'll see some good faith in this argument here. I got to ask, why did Philadelphia pull out Dram Shop as an exclusion? Think about the general policy. If it's not pulled out, it's probably an occurrence. My position is, is that not an implicit admission that Dram Shop liability is an occurrence? Because otherwise, if an insurance policy doesn't cover a certain risk, there's no duty to disclaim it's not covered. If they truly believed this was not an occurrence, why would you have a separate premium payment for Dram Shop? That's one issue I want to discuss with you. And besides that, they charged an extra premium for it. Buffalo Central Terminal got whacked up all over the place. GL policy, Dram Shop, and a fundraising event policy. Basically, they're getting nothing for their bargain here. Second point, let's assume that they wanted to make it specific, and they could have by doing this, judges. In the Mount Vernon Insurance Company case, which was discussed by Justice Wesley in that Agado case. I'm sorry for my mispronunciation. Looking at the Mount Vernon case, a 1976 case, in that case, there was an assault and battery exclusion. And Judge Wesley distinguished the case before the bench at that time in the Court of Appeals by saying, in Mount Vernon, when it said, when it took out the assault and battery from the GL policy, what they did in Mount Vernon was, the carrier said, that we will not pay, and there'll be no coverage for a claim arising out of assault and battery brought about by or at the direction of the insured. And in that case, they further stated assault and battery is not an accident. Now that telling the insured by that exclusion, it's not an accident. That's expressing their opinion. Here, they didn't do that. They could have very easily done it in the special fund raising endorsement there by saying that the bodily injury has to arise out of the, or it's any bodily injury arising out, it's not an accident. Telling them what they're getting for their money. They didn't do that. So let's assume, by virtue of what they did do, in our argument, there's an ambiguity. Clearly, at the worst case, it's an ambiguity. I feel, and I agree with the court to the extent I can glean from the arguments here, that it should have been specific and excluded. By not doing it, I take the position, at least implicitly, and by picking the coverage, taking it out of the GL policy, they're conceding or believe that it was an occurrence. There's no other reason to pull it out if it weren't. So that's that portion. And by the way, 1976 was the Mount Vernon case. The year 2000 was the Mavericks case. So as of 2000, Philadelphia Insurance and its lawyers should have known that. At least two dissenting opinions were made in the second department. Based on those two, they would be on notice that wouldn't it behoove us to avoid litigation by explicitly stating in our endorsements what's not included and what is an occurrence. What isn't an occurrence, and secondly, that by virtue of that Mavericks case in the dissent, as of 2000, they knew that there was an argument that could be made, but rejected by every other court, that you could claim that a dram shop was not an occurrence. Take care of that in your policy. Just say it. They didn't. Finally, just the issue of certification. Judge Lynch, I think you handled that before. There's no controlling law in the state of New York on what an occurrence is. Excuse me, that a dram shop is not equal in occurrence. And as you pointed out, from Judge Cardozo to this day forward, the New York Court of Appeals has set forth case after case, arson, murder, that they are covered. And finally, I don't think any of you or any of us need a crystal ball to determine what Unless there are any questions, thank you very much. Thank you. We'll hear the rebuttal. I'll start with the unintended act and the unintentional consequence. New York doesn't recognize a tort, a common law tort for negligent provision of alcohol. This is a dram shop claim. In fact, if anything, the foreseeability analysis does not even apply. That under the, if central terminal is considered the actor that caused the injury. Now, and that's hypothetically speaking, because they did not. They were not the operator of the vehicle. They are not liable for the automobile accident or the conduct of the driver. This is not vicarious liability. This is a statute. And if anything, the New York State Legislature cast aside this whole idea about, well, if you act intentionally but you unintend something, the legislature went further. They basically said, you serve a drunk and they go out on the highway and cause harm, you're liable no matter what. And that's why I say the district court erred by saying that there was an occurrence. We don't know. Sounds like something I'd really want to get insurance about. Exactly, and your honor. So, do you have a policy that just covers dram shop liability? Yes, it's- Separate? Yes, absolutely, and that's what I want to speak to, secondly, is the structure of this policy. Central terminal for the dram shop exposure, which again, as the court of appeals, you have to have a commercial sale. If you don't have a liquor license, you can't violate the Dram Shop Act. They bought liquor liability coverage. And again, when you look at the structure of this policy, for the one day, for one day, they paid $975 for liquor liability coverage. For general liability coverage, Judge Walker, under the fundraising endorsement, that's general liability coverage. They paid $500. So they were protected for general liability exposure. And again, your honor, to your point about the landlord, and that's responsible for an intruder that gets in, well, under the common law, they owed a duty to that person. We don't owe a duty to some stranger out on the highways and byways 50 miles away. That's why it's an abrogation of the common law. The New York State Legislature said, we're going to make you liable, not because of it's unintended, intended, or anything. We're not the actor. They're going to make us strictly liable by operation of a statutory violation. And when I- You're also arguing that you're not responsible even under the liquor coverage. I will defer, your honor. That will be decided in the underlying court. Whether or not our insured is liable has not been decided. I'm not talking about whether the insured is liable. You're saying you don't have to pay if they are liable. If they are, in this case, under these pleadings, where there's only a single cause of action in the dram shop, if they are found liable under the dram shop, Philadelphia pays under the liquor liability coverage part. They bought that coverage. What they're trying to conflate and sweep over is put, say, okay, I bought liquor liability coverage for liquor liability claims. We're going to pretend it's a general liability claim, and we want general liability coverage. It's the structure of this policy is, there's no ambiguity. It's very clear that you, and that's why under the fundraising- Endorsement to the general policy. That's right, and that's because the fundraising endorsement is actually an exclusion, but they purchased it. They brought back coverage for general liability claims. For instance, like you said with the landlord hypothetical, if there was an accident at the event, and let's say somebody assaulted somebody, and you owe the people on your premise a common law duty. That's a general liability claim. That's an occurrence. That's covered under the fundraising endorsement to the general liability coverage. That's not a- The argument that they're making then, I think it makes some sense, though, is you wouldn't buy this extra coverage, which would then have the effect of limiting your general coverage. That would not make sense. No, it doesn't, because it's not a limitation. It's in addition. They bought liquor liability coverage because they knew they had a liquor license. And they said for two events, they bought liquor liability coverage because again, under a Dram Shop Act, there has to be a commercial- Or they intended to get the additional coverage. And that's right, Your Honor. They bought additional coverage. They have one million liquor liability, and that's the additional coverage for $975. And they purchased for $500 the general liability coverage for the fundraising event that day. So you're absolutely correct, Your Honor. They purchased two- I don't think I'm saying what you think I'm saying. Okay. But you're out of time in any event. We will reserve decision, and thank you. I thank you, Your Honor, for taking the time to hear the argument.